### A92A1657. ASHBURN BANK v. FARR.
(426 SE2d 63)

ANDREWS, Judge.

In September 1989, Ashburn Bank loaned Lumpkin approximately $62,000 to buy cattle. The Bank took a note from Lumpkin and perfected a security interest in the cattle. Thereafter, Lumpkin sold the cattle to Farr for cash, and defaulted on the note owed to the Bank. In addition to suing Lumpkin on the note, the Bank also sued Farr for the cattle in his possession, based on its prior perfected security interest. The trial court granted summary judgment in favor of Farr, ruling that under the provisions of the Food Security Act (7 USCA § 1631) (effective December 1986) Farr took the cattle free from the Bank's perfected security interest. The Bank appeals claiming that factual issues preclude the grant of summary judgment.

The trial court correctly ruled that the Food Security Act (7 USCA § 1631) controls this transaction, and preempts the farm products exception contained in OCGA § 11-9-307 (1) of the Uniform Commercial Code as enacted in Georgia. See OCGA § 11-9-104 (a). Under OCGA § 11-9-307 (1), "[a] buyer in ordinary course of business (subsection (9) of Code Section 11-1-201) *other than a person buying farm products from a person engaged in farming operations* takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." (Emphasis supplied.) In enacting 7 USCA § 1631 as part of the Food Security Act, Congress concluded that the buyer's exposure to double payment created by the farm products exception constitutes an obstruction to free commerce in those products. Accordingly, in the absence of certain exceptions created under the Act, 7 USCA § 1631 (d) provides that "notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such." The Act contains two exceptions dependent upon enactment of a federally approved centralized system of filing financing statements with each state's Secretary of State, and a third exception which requires that the buyer receive notice of the creditor's interest in a form specified by the Act. White & Summers, Uniform Commercial Code, § 26-14 at 540 (3rd ed. 1988); 7 USCA § 1631 (c) (2), (d), (e). Georgia has not elected to enact a centralized filing system, and it

is undisputed that Farr was not given the specified notice.

Nevertheless, the Bank contends that 7 USCA § 1631 does not apply to the present transaction because Farr did not act in good faith as a buyer in the ordinary course of business, and the cattle were not farm products produced by Lumpkin in a farming operation. We find no merit in these contentions.

The federal Act contains its own definition of "buyer in the ordinary course of business," and provides that "[t]he term 'buyer in the ordinary course of business' means a person who, in the ordinary course of business, buys farm products from a person engaged in farming operations who is in the business of selling farm products." 7 USCA § 1631 (c) (1). Thus, the federal Act does not contain the "good faith and without knowledge" language of OCGA § 11-1-201 (9), which provides: " 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind. . . ." We find no evidence on the present record that Farr failed to act in good faith, or had knowledge of the Bank's security interest. Moreover, under the Food Security Act, the test is not whether Farr had actual notice that the sale violated a security interest, but whether Farr takes subject to the Bank's security interest because there was compliance with one of the exceptions defined in the Act.

We find no error in the trial court's determination that the sale of the cattle was a purchase by Farr, in the ordinary course of business, of farm products produced by Lumpkin in a farming operation. The term "farm product" is defined under 7 USCA § 1631 (c) (5) to include "species of livestock such as cattle, hogs, sheep, horses, or poultry used or produced in farming operations . . . that is in the possession of a person engaged in farming operations." See OCGA § 11-9-109 (3) (livestock defined as farm products if used or produced in farming operations, "and if they are in the possession of a debtor engaged in raising, fattening, grazing, or other farming operations"). Farr bought the cattle for his cattle ranching operations. Lumpkin ran a feedlot operation in which he entered into agreements with cattle owners to take possession of their cattle, feed and fatten them. He also periodically purchased cattle to raise, fatten and resell. Lumpkin was not a cattle dealer or broker who bought cattle to hold for immediate resale. In the present transaction, Lumpkin bought the cattle at issue to fatten and resell, and agreed to sell the cattle to Farr after fattening. It is clear under these circumstances that Lumpkin was engaged in farming operations, and that the cattle were farm products. See *Baker Prod. Credit Assn. v. Long Creek Meat Co.*, 513 P2d 1129, 1132 (Or. 1973).

Under 7 USCA § 1631, Farr purchased the cattle free of the Bank's security interest, and the trial court correctly granted summary judgment.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 30, 1992.

*Stephen L. Ivie*, for appellant.
*Michael T. Nations*, for appellee.